IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| REBA JENKINS,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART, Commissioner of the Social Security Administration,<br><br>    Defendant. | ORDER AFFIRMING THE COMMISSIONER'S DECISION<br><br><br><br>Case No. 2:06-CV-00163 PGC |

Plaintiff Reba Jenkins brings this action for the court to review the Social Security Administration Commissioner's denial of her application for disability and social security insurance benefits under Title II of the Social Security Act.[1]  Ms. Jenkins argues the administrative law judge (ALJ) failed to properly assess the combined effect of her impairments and improperly rejected the opinions of the treating medical sources.  Ms. Jenkins also claims the ALJ failed to identify jobs consistent with her functional impairments.  The Commissioner counters that the ALJ legitimately discounted the treating medical sources' opinions in light of the objective medical evidence, properly considered the combined effect of Ms. Jenkins'

---

[1] 42 U.S.C. § 405(g).

impairments, and properly identified jobs available to her. The court finds the ALJ applied the correct legal standards and substantial evidence supports his decision to deny Ms. Jenkins disability insurance benefits, so the court affirms the Commissioner's decision and denies Ms. Jenkins' motion.

## FACTS AND FINDINGS

For purposes of this appeal, the court finds the following facts.

A.  *General Background*

On May 26, 2005, the date of the ALJ's decision, Ms. Jenkins was forty-two years old. She had a high school education and had previously worked as a scheduler, telephone solicitor, floral designer, secretary, and receptionist. Ms. Jenkins claims she became disabled on July 21, 2001, at the age of thirty-eight, due to muscle contractions, degenerative disc disease, hypertension, sleep apnea, carpal tunnel syndrome, involuntary muscle contractions in her arm, back problems, and obesity. Ms. Jenkins filed applications for disability insurance benefits and social security insurance on August 6, 2003, and July 21, 2003, respectively.

Before the alleged onset date of her disability, Ms. Jenkins experienced carpal tunnel pain in her right wrist. On August 19, 1999, a physician tried to remedy the problem by performing carpal tunnel release surgery.

On January 7, 2001, Ms. Jenkins complained of a two-day history of neck and shoulder pain on her right side. Doctors at the emergency room found Ms. Jenkins' right shoulder showed muscle tightness, as well as increased pain in response to touch and while moving. On January 8, 2001, doctors x-rayed Ms. Jenkins' spine, revealing some degenerative disc disease in her

lower spine.  An MRI performed on January 25, 2001, confirmed Ms. Jenkins suffered from degenerative disc disease.

When Ms. Jenkins' symptoms failed to improve with conservative care, Dr. Paul Gardner fused two discs in her back on March 16, 2001.  Ms. Jenkins reacted well to the surgery — she had full motion and strength.  In notes from a post-surgical visit on May 10, 2001, Dr. Gardner concluded Ms. Jenkins was "doing very well."  At that time, Ms. Jenkins had no arm pain, tingling, numbness, weakness, headaches, or neck pain.  She relayed she was "very pleased" with the outcome of her surgery.  Dr. Gardner indicated Ms. Jenkins could return to full activity at work.  He restricted her only from lifting more than fifteen pounds.

Dr. Kim Rowland assessed Ms. Jenkins on November 28, 2001, for a history of hypertension.  Ms. Jenkins indicated she took medication for hypertension, but she felt more fatigued than usual.  Ms. Jenkins reported she was the primary caregiver for children in her home.  Her blood pressure was elevated at the visit.  Dr. Rowland adjusted Ms. Jenkins' medications.

On July 3, 2002, Ms. Jenkins was tested for sleep-related problems.  Her sleep study results revealed moderate obstructive sleep apnea and restless leg syndrome.  Dr. Kirk Watkins prescribed medication for Ms. Jenkins and started her on therapy involving continuous positive airflow pressure.

Brett Robbins, a nurse practitioner, treated Ms. Jenkins in April 2003, and noted her complaints of fatigue, multiple joint pain, back pain, hypothyroidism, hypertension, and gastroesophageal reflux disease.  Nurse Robbins recorded Ms. Jenkins' weight as 338 pounds

and her height as sixty-three inches tall.  Nurse Robbins found no musculoskeletal or neurological problems during Ms. Jenkins' examination.  He ordered laboratory testing.  Nurse Robbins saw Ms. Jenkins at a follow-up visit on May 2, 2003.  At that time, Nurse Robbins diagnosed Ms. Jenkins with hypertension, hyperlipidemia, fatigue, anemia, and morbid obesity.  Nurse Robbins altered Ms. Jenkins' medications.

Nurse Robbins saw Ms. Jenkins again on August 1, 2003.  He noted Ms. Jenkins had right wrist pain and edema, and showed signs of carpal tunnel syndrome on her right side.  Nurse Robbins recommended to Ms. Jenkins that she lose some weight, and that she walk two miles, three times a week.

In connection with Ms. Jenkins' social security application, a state agency physician, Dr. Teddy Wittbeck, reviewed her medical history and assessed her residual functional capacity.  On November 6, 2003, Dr. Wittbeck determined that Ms. Jenkins could occasionally lift twenty pounds; frequently lift ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; often balance; occasionally climb, balance, stoop, kneel, crouch, and crawl; and avoid constant fingering because of her carpal tunnel syndrome.

On December 15, 2004, Nurse Robbins assessed Ms. Jenkins' complaint of left wrist pain due to tying bows at work.  Nurse Robbins evaluated whether Ms. Jenkins had carpal tunnel syndrome in her left wrist.  He referred her for further evaluation on that issue.  Nurse Robbins also advised Ms. Jenkins to continue with a program of diet and exercise.

Nurse Robbins filled out a residual functioning capacity assessment for Ms. Jenkins on

February 17, 2005.  Nurse Robbins' supervising physician, Dr. Jason North, cosigned the form.  In it, Nurse Robbins indicated that Ms. Jenkins suffered from hypertension, gastroesophageal reflux disease, chronic neck pain, low back pain, pain of the right shoulder, arm, and wrist, morbid obesity, sleep apnea, and pain of the left arm and wrist.  Nurse Robbins opined Ms. Jenkins' limitations included sitting or standing no more than thirty minutes at one time; walking no more than fifteen minutes at one time; with no lifting or carrying more than ten pounds frequently or twenty pounds occasionally.  Nurse Robbins thought Ms. Jenkins would be in pain or need to rest if she walked more than one city block; could only sit, stand, or walk three or four hours during an eight-hour workday; would need unscheduled breaks every fifteen to twenty minutes; could frequently look down, turn her head, look up, hold her head steady, and twist; could sometimes stoop, bend, crouch and squat; could rarely climb stairs, could never climb ladders; could reach and manipulate with her right hand ten percent of the time; and could reach and manipulate with her left hand twenty to thirty percent of the time.

B.       *Benefits Hearing and Ms. Jenkins' Appeal*

Ms. Jenkins filed an application for disability insurance benefits on August 6, 2003, and for social security insurance on July 21, 2003.  The Social Security Commission denied her claim initially and on reconsideration.  Ms. Jenkins requested and was granted a hearing before an ALJ.  The hearing was held on February 8, 2005, in St. George, Utah, before Administrative Law Judge Rand Farrer.  The ALJ issued a decision on May 26, 2005, finding that Ms. Jenkins was not disabled for social security purposes.  The Appeals Council declined Ms. Jenkins' request for review, so the ALJ's decision became final.

At the hearing before the ALJ, Ms. Jenkins testified that she began working twenty to thirty hours a week at a craft store on June 29, 2004.  Ms. Jenkins can alternate between sitting, standing, and walking at her job, and can take an extra day off when she needs to.  Ms. Jenkins indicated that, in order to maintain medical benefits, she tries to work thirty hours a week.  Ms. Jenkins' previous employer laid her off in 2001 because the company moved to Nebraska.  After the company moved, Ms. Jenkins attended vocational rehabilitation and took a business class.  Ms. Jenkins complained of continued problems with her hands, and said two fingers on her right hand had been numb for ten years.  Ms. Jenkins said she tried not to lift things.  She complained of sleep apnea, and said she had to lie down throughout the day for thirty to forty-five minutes at a time.  She expressed difficulty with climbing stairs, bending, and stooping.

After Ms. Jenkins testified, the ALJ heard testimony from Kenneth Lister, a vocational expert.  Prior to testifying, Mr. Lister had reviewed the exhibits relating to Ms. Jenkins' past work and listened to Ms. Jenkins' testimony.  Mr. Lister identified Ms. Jenkins' past relevant work positions and testified to the transferrable skills Ms. Jenkins acquired in those positions.  Also, the ALJ requested him to work through several hypothetical situations relating to an individual's ability to perform work when faced with certain limitations.  Specifically, the ALJ asked Mr. Lister to assess the work capacity of an individual of Ms. Jenkins' age, education, and work experience with the following limitations:

> limited to lifting approximately 10 pounds and sitting . . . in increments of 30 minutes and for a total of up to six hours . . . standing would be in increments of up to 30 minutes at a time and walking would be in increments of about 15 minutes, and combined, those two would be approximately two hours.  And the individual would also need to lie down . . . one hour during the typical eight-hour work day, and that would need to be accomplished as part of the morning and

afternoon breaks and part of the lunch period. This individual is probably going to miss up to 24 days of work per year due to pain and other symptoms. The individual also could only do occasional bending, stooping, crouching, stair climbing, and for the rapid repetitive movements of the hands, that would be, let's say about 50 percent of the work day.[2]

Mr. Lister responded that an individual with those limitations could perform Ms. Jenkins' past relevant work as a telephone solicitor and a receptionist. The ALJ then further limited the hypothetical, asking about job performance if the same individual could only use her hands for rapid, repetitive movement one-third of an eight-hour workday. Mr. Lister testified that while the limitation would prevent the person from working as a receptionist or a telephone solicitor, she could still work as a credit clerk and an information clerk.

On May 26, 2005, the ALJ issued a decision on Ms. Jenkins' disability and social security claims. Using the five-step sequential evaluation process,[3] the ALJ found Ms. Jenkins suffered from a severe impairment, but she was not disabled. The ALJ concluded that even with her limitations, she could perform work existing in significant numbers in the national economy.

Specifically, at step one, the ALJ found that Ms. Jenkins was not engaged in any substantial gainful activity subsequent to the alleged date of onset. At step two, the ALJ found that the objective medical evidence established that Ms. Jenkins had medically-determinable severe impairments of morbid obesity, degenerative disc disease, lower cervical spine pain with herniated C5–6 status (post-discectomy and fusion with hardware), right carpal tunnel syndrome

---

[2] R. 219–20.

[3] *See* 20 C.F.R. § 404.1520; *Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

(post-surgical release in 1999), obstructive sleep apnea, restless leg syndrome, and possible left carpal tunnel syndrome.  At step three, the ALJ concluded Ms. Jenkins' severe impairments, alone or in combination, failed to meet or equal any impairment in the Listing of Impairments under Appendix 1 of the regulations.[4]

At step four, the ALJ analyzed Ms. Jenkins' residual functional capacity and her past relevant work.  The ALJ found Ms. Jenkins had the residual functional capacity to carry or lift ten pounds, sit and stand for thirty minutes at a time for up to six hours in an eight-hour workday; walk for fifteen minutes at a time for a total of two hours in an eight-hour workday; occasionally stand, stoop, crouch, or climb stairs; and perform rapid repetitive hand movements for one third of the workday.  The ALJ found Ms. Jenkins' manual dexterity on her right hand to fall in the bottom thirty percent of the population, and the manual dexterity on her left hand to fall within the bottom forty percent of the population.  The ALJ determined Ms. Jenkins would need to lie down or recline for one hour during the workday, but could do it during breaks.  Finally, he determined she would miss up to twenty-four days of work a year due to her impairments.

At step five, based upon the testimony of a vocational expert, the ALJ determined Ms. Jenkins could perform work that existed in significant numbers in the national economy.  Therefore, the ALJ found Ms. Jenkins to not be disabled within the meaning of the Social Security Act.

Ms. Jenkins sought review of the ALJ's hearing decision from the Appeals Council.  The Appeals Council denied Ms. Jenkins' request for reconsideration and adopted the ALJ's decision

---

[4] *See* 20 C.F.R. § 404.1520(d).

as the Commissioner's final decision. Ms. Jenkins now brings this action, seeking judicial review of the Commissioner's decision denying her application for social security and disability insurance benefits.

## STANDARD OF REVIEW

The standard of review for social security challenges is set forth in 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[5] In other words, the court reviews the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether the ALJ applied the correct legal standards.[6] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[7] The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[8] However, the court does not "reweigh the evidence or substitute [its] judgment for the Commissioner's."[9]

---

[5] 42 U.S.C. § 405(g).

[6] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

[7] *Grogan*, 399 F.3d at 1261.

[8] *Id.* at 1262.

[9] *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

**DISCUSSION**

The court finds the ALJ's conclusions to be supported by substantial evidence and free from legal error. Under the Social Security Act, the Social Security Administration is authorized to pay disability insurance benefits only to persons who have a "disability," as defined by the Social Security Act. A person is disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[10]

In order to determine whether a Social Security claimant is disabled, the Commissioner has developed a five-step evaluation.[11] The claimant bears the burden of proof for steps one through four, and if the claimant fails to meet this burden, consideration of any subsequent steps is rendered unnecessary.[12] As the Tenth Circuit explained in *Fischer-Ross v. Barnhart*:[13]

> Step one requires a claimant to establish she is not engaged in "substantial gainful activity." Step two requires the claimant to establish she has a "medically severe impairment or combination of impairments." Step three asks whether any "medically severe impairment," alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude "substantial gainful employment." If listed, the impairment is conclusively presumed disabling. If unlisted, the claimant must establish at step four that her impairment prevents her from performing work she has previously performed. If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has

---

[10] 42 U.S.C. § 423(d)(2)(A).

[11] *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

[12] *Williams*, 844 F.2d at 750.

[13] 431 F.3d 729 (10th Cir. 2005).

the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience.[14]

In this case, the ALJ denied Ms. Jenkins' claim at step five, finding that while she had a severe impairment, she was able to perform work existing in significant numbers in the national economy.  Specifically, the ALJ first found Ms. Jenkins' residual functional capacity to include various severe  limitations, especially with regard to her ability to stand and walk for extended periods and her ability to perform repetitive hand movements.  But these limitations, according to the ALJ, would not prevent Ms. Jenkins from performing work as a credit clerk and an information clerk.

Ms. Jenkins claims the ALJ failed to consider the combined effect of her impairments and rejected the opinions of Ms. Jenkins' treating medical sources without adequate basis.  Further, Ms. Jenkins argues the ALJ failed to adequately identify jobs consistent with Ms. Jenkins' impairments.  At one point, Ms. Jenkins implies she disagrees with the ALJ's determinations at steps three through five — however, her actual arguments only center around the ALJ's evaluation of her disability status and level of impairment, and his step five assessment.  The Commissioner counters that the ALJ decided properly.  A review of the record and the ALJ's decision reveals that his findings as to Ms. Jenkins' impairments and ability to work are supported by substantial evidence in the record.

A.   *Consideration of Opinions of Medical Sources*

First, Ms. Jenkins objects to the ALJ's determination that the opinions of Nurse Robbins

---

[14] *Id*. at 731 (citations omitted).

and Dr. North were not controlling. An ALJ must specifically articulate the basis for discounting a treating physician's opinion.[15] In this case, the ALJ provided multiple reasons for discounting Nurse Robbins' opinion — one of which is that the opinion was inconsistent with the objective medical evidence. When a treating medical source's opinion differs from the objective evidence, the ALJ may discount the weight of the opinion.[16]

In this case, there are many inconsistencies between Nurse Robbins' opinion and the record evidence. For one thing, although Nurse Robbins opined Ms. Jenkins would need to lie down for up to four hours per workday, Ms. Jenkins herself testified only to the need to lie down for thirty to forty minutes. And as the ALJ noted, Ms. Jenkins' current daily activity and work activity belies the claim of work-prohibitive fatigue. Ms. Jenkins works an average of twenty-five hours a week and acts as the primary caregiver to children at home. Additionally, although Nurse Robbins wrote in his clinical findings that Ms. Jenkins could not walk one city block without difficulty, in August 2003, Nurse Robbins recommended that Ms. Jenkins exercise by walking for two miles, three times a week. Also, as the ALJ noted, no objective evidence supports Ms. Jenkins' claim of hand dexterity limitations. Ms. Jenkins had carpal tunnel surgery on her right hand and the ALJ noted she had possible carpal tunnel syndrome on her left. But no objective medical evidence showed specific limitations resulting from these conditions. Indeed, Ms. Jenkins continued to work after her 1999 carpal tunnel surgery. Nurse Robbins assigned

---

[15] *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (citing *Frey v. Bowen*, 8116 F.2d 508, 513 (10th Cir. 1987)).

[16] *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

specific percentage limitations to the use of Ms. Jenkins' hands, but provided no medical explanation or basis for his assignments.[17] Seemingly, he based his conclusion on Ms. Jenkins' subjective complaints, but a claimant's own complaints are insufficient, by themselves, to establish a disability.[18] While these inconsistencies are not dispositive, they support the ALJ's decision not to give Nurse Robbins and Dr. North's opinion controlling weight.[19]

Ms. Jenkins specifically objects to the ALJ's statement that he discounted Nurse Robbins and Dr. North's opinions, in part, because Nurse Robbins is not an acceptable medical source under social security rules. The court need not even address the validity of discounting the medical opinion on these grounds because the ALJ could properly discount the opinion due to the inconsistencies between the objective evidence and the opinion. Even if the ALJ had designated Nurse Robbins as an acceptable medical source, the inconsistencies cited by the ALJ support his decision to give lesser weight to the opinion. Moreover, there is no indication the ALJ wholly rejected the report of Nurse Robbins and Dr. North. Similarly, the ALJ did not wholly adopt the report of the state physician — he rejected the state physician's conclusion that Ms. Jenkins could stand for a prolonged period. Instead, he seems to have rejected both reports only insofar as they conflicted with the objective medical and record evidence — a valid approach,[20] and an

---

[17] *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.2d 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings.")

[18] *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[19] *Branum*, 385 F.3d at 1275.

[20] *See id.*

approach the ALJ adequately explained.  Ultimately, this lack of consistency between the medical evidence and the medical opinion supports the ALJ's decision to discount the opinion and, therefore, the decision to deny benefits.

B.       *Combined Effects of Ms. Jenkins' Impairments*

Next, there is no indication the ALJ failed to properly consider the combined effect of Ms. Jenkins' impairments, as required by social security rules.[21]  The ALJ noted that Ms. Jenkins was morbidly obese, has muscle contractions, degenerative disc problems, hypertension, carpal tunnel syndrome, back problems, and sleep apnea.  Although Ms. Jenkins argues the ALJ overlooked the severity of her condition, Ms. Jenkins points to no specific impairment the ALJ failed to consider in combination with the rest.  The ALJ seems to have analyzed the evidence as a whole and properly found Ms. Jenkins' testimony about her pain and functional limitations to be somewhat inconsistent with the objective evidence.  For one thing, the ALJ noted that although Ms. Jenkins claims her symptoms are disabling, she maintains a job.  At the hearing, the ALJ noted Ms. Jenkins work level falls barely below the amount needed to qualify as substantial gainful activity.  In addition to her job, the record shows Ms. Jenkins cares for her kids at home, fixes meals, manages her finances, sometimes vacuums and washes dishes, attends church ten to twelve times a month, and needs no help meeting her personal needs.  For another thing, the ALJ highlighted many normal components of Ms. Jenkins' medical history when he described it.  He noted the normal aspects of her arm and spinal examinations and the fact that she was doing well after her back surgery.

---

[21] *See* 20 C.F.R. § 404.1523.

Finally, Ms. Jenkins' treating physicians appeared to place no significant functional limitations on her activities until after she requested them to opine as to her disability status in February 2005. In May 2001, for example, Dr. Gardner released Ms. Jenkins after her back surgery with a comment that she was doing very well, could go back to work, and was restricted only from lifting more than fifteen pounds. After this release to return to work, Ms. Jenkins' first recorded complaint of disabling musculoskeletal pain was to Nurse Robbins in April 2003. Such lack of need for ongoing treatment (for a two year period) is inconsistent with a claim of a disabling impairment.[22] Even Nurse Robbins prescribed only conservative treatments to Ms. Jenkins. And Ms. Jenkins left her job in 2001 only because her employer moved to Nebraska, not because she was unable to work — that she left the workforce for non-health-related reasons is notable.[23] Ms. Jenkins' argument on this point seems to basically amount to dissatisfaction with the ALJ's ultimate determination that Ms. Jenkins was not disabled within the meaning of the Social Security Act. But the court finds substantial evidence in the record supports the ALJ's decision with regard to Ms. Jenkins' disability status and the cumulative effect of her impairments.

C.   *Ability to Work at Jobs Available in the National Economy*

Finally, the ALJ properly assessed Ms. Jenkins' ability to work at jobs available in sufficient numbers in the national economy. Ms. Jenkins argues that the ALJ's reliance on the testimony of the vocational expert with regard to this issue was necessarily flawed because Mr.

---

[22] *See Luna v. Brown*, 834 F.2d 161, 165–66 (10th Cir. 1987).

[23] *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990).

Lester based his conclusions on an incomplete hypothetical question. While it is true that testimony based on flawed hypothetical questions cannot constitute substantial evidence,[24] the ALJ's hypothetical question in this case seems to have accurately described Ms. Jenkins' limitations and circumstances. The court has already affirmed the ALJ's findings with regard to the nature and effect of Ms. Jenkins' impairments — and the ALJ adequately incorporated these findings into his hypothetical question. In sum, because the court sees a reasoned basis for the ALJ's conclusions as to Ms. Jenkins' impairments, the court fails to see how the questions posed to Mr. Lester were flawed. The ALJ, therefore, was entitled to rely on Mr. Lester's conclusions in denying Ms. Jenkins' claims.[25]

## CONCLUSION

In short, the court finds the ALJ's determinations to be legally correct and well-founded in evidence. Accordingly, the court upholds the Commissioner's decision denying disability insurance and social security insurance benefits to Ms. Jenkins, and denies Ms. Jenkins' request to reverse the decision or remand the case. The Clerk of the Court is directed to close the case.

DATED this 30th day of January, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[24] *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citing *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)).

[25] *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).